Crocker and another vs. Currier.

CROCKER and another, Respondents, vs. CURRIER, Appellant.

*March 17 — April 6, 1886.*

PRACTICE: REFERENCE: COSTS: APPEAL TO S. C. *(1) Consent to refer-ence. (2) Long account. (7) When referee's findings become find-ings of court: Waiver of costs by failure to perfect judgment. (8) Exceptions to be renewed before court: Appeal.*

LIENS. *(3) Findings: To whom materials furnished. (4) Interest of defendant: Land contract: Conveyance to third person. (5) Judg-ment: Lien on more than one acre: Immaterial error. (6) Per-sonal judgment or assessment of amount due?*

1. Any issue in any action may be referred if the parties consent thereto, and they will be bound by such consent.

2. An account containing over one hundred items is a "long account," and will justify a compulsory reference.

3. In an action to enforce a lien for building materials the defendant claimed that they were furnished to a contractor whom he had paid in full. The referee found that they were sold and delivered directly to the defendant, and that the plaintiffs had no knowledge of the contract with such contractor. *Held,* that a further finding as to the terms of such contract was not necessary.

4. At the date of the first charge for materials furnished for building a house, the defendant was in possession of the land under a con-tract of purchase, and had paid therefor in full. *Held,* that the lien was not defeated by his subsequently procuring a conveyance to be made to his sister instead of to himself.

5. In an action to enforce a lien for materials a judgment giving a lien on defendant's interest in more than one acre of land in an incor-porated village, is erroneous; but where the defendant had testified that he had no interest in a portion of such land, which, being deducted, would leave less than an acre affected by the lien, the error is immaterial.

6. A judgment in such action began in the usual form of personal judg-ments — that the plaintiffs have and recover from the defendant a certain sum, with costs, — but did not award execution, and further directed a sale of the property, and that if there should be a defi-ciency after sale the plaintiffs might have personal judgment there-for and execution. *Held,* that the first part of the judgment would be construed not as a personal judgment but merely as an assess-ment of the amount due.

7. Findings by a referee when confirmed by the court become the findings of the court, and unless the successful party perfects his judgment within sixty days thereafter he waives his right to recover costs, under ch. 202, Laws of 1882.

8. Unless exceptions taken before the referee are renewed when the trial court acts upon his report, they are not available on appeal to this court.

APPEAL from the Circuit Court for *Clark* County.

Appeal by the defendant from a judgment against him, in an action to enforce a statutory lien for the price of materials furnished and labor performed by the plaintiffs in the erection of a dwelling-house for the defendant. No question is raised on the pleadings. The cause being at issue, the same was referred by the court to a referee to hear, try, and determine. A trial was had before such referee, who thereafter reported his findings of fact and conclusions of law to the court. Such findings being in favor of the plaintiffs, the defendant moved the court to set aside and dismiss the report, and the plaintiffs moved for judgment upon it. The court denied the motion of the defendant, and granted that of the plaintiffs, at the same time overruling the exceptions of defendant to the report, and confirming the same. The order in this behalf was made at a special term of the court commencing September 17, 1883. Judgment was rendered by the court, pursuant to such order, March 2, 1885. The costs were taxed September 24, 1885, and on the following day the court, on appeal, affirmed the taxation, and ordered the amount thereof to be inserted in the judgment, which was accordingly done.

The findings of fact by the referee which were thus confirmed by the court are, briefly, as follows: (1) The plaintiffs were partners as alleged in the complaint. (2) Between May 3, 1881, and October 13, 1882, the plaintiffs, as such copartners, and as principal contractors, sold and delivered to the defendant goods, wares, and merchandise, and performed work and labor for him to the amount and value of

$426.48, upon which the defendant has paid $183.43, leaving a balance due thereon of $243.05. Interest on such balance from October 28, 1882 (when the action was commenced), to July 28, 1883, the date of the report, is allowed at $12.76, making in all $255.81 due the plaintiffs, and unpaid. Of the above account $3.78 is for articles not used in the erection and construction of the dwelling-house. (3) All the remaining items of the account allowed were used in and about the construction of a certain frame dwelling-house situated upon the real estate described in the complaint. The last item in such account accrued October 13, 1882. (4) At the date of the first charge for material used in such house, June 25, 1881, the defendant had an interest in the lands upon which the house was erected. (5) A sufficient petition for a lien upon the premises described in the complaint, for the amount unpaid for such materials and labor, was duly filed by the plaintiffs, in the proper office, on October 23, 1882. (6) "If any contract to build the frame dwelling-house mentioned in the complaint was made between the defendant, *John Currier,* and the witness Samuel Calway for $1,600, or any other entire sum, as the evidence tends to prove the fact, the nature of such contract was kept secret as to the plaintiffs in this action, and they had no notice or information thereof."

The conclusions of law are that plaintiffs are entitled to judgment against the defendant for $255.81, and are entitled to have the amount thereof, less $3.78, " declared a lien upon all the right, title, and interest which the defendant, *John Currier,* had on the 25th day of June, A. D. 1881, or has since acquired, in and to the premises described in the complaint, and upon which said dwelling-house is situated, not exceeding one acre in area, and said interest sold to satisfy such lien and costs."

For the appellant there was a brief by *James O'Neill* and *B. F. French,* and oral agument by *Mr. O'Neill.*

For the respondents there was a brief signed by *R. F. Kountz, Ring & Youmans*, and *R. J. MacBride*, and oral argument by *Mr. Ring*.

LYON, J. 1. A question of practice will first be disposed of. On motion of the defendant the court sent the case to a referee to hear, try, and determine the issues therein. The order of reference recites that this was done with the consent of both parties given in open court. It is not denied that such consent was given. On the hearing before the referee, however, both parties claimed that the case was not referable under the statute, and that the referee had no jurisdiction to hear, try, and determine the issues.

The point is not well taken for two reasons: (1) Any issue in any action may be referred if the parties consent thereto, and in this case they did so consent, and are bound thereby. (2) The trial of the issues herein required the examination of a long account, and the court had power, without such consent, to send such issues to a referee to hear and decide them. R. S. sec. 2864, subd. 1. There are over one hundred items in the disputed account.

2. It is not seriously questioned that the plaintiffs furnished the materials for and did the work upon the defendant's house, for which they claim to recover in this action, and that the referee found the true balance therefor remaining unpaid. But the defendant claimed that he let the contract to one Calway to furnish the materials for and to erect the house for a specified sum, which the defendant paid him in full; and that the materials and work of the plaintiffs were furnished to and performed for Calway, and not the defendant. On the other hand, it was claimed that Calway was employed at a stipulated price per day to superintend the erection of the house, and did not contract to furnish any materials therefor. This was the question to which the testimony given upon the trial was chiefly di-

rected, and such testimony is very conflicting. Probably it is sufficient to support a finding either way.

It is correctly said that the referee failed to find what the contract was. This omission is assigned as error. We do not think a finding on that question is essential to a recovery by the plaintiffs. It is found that the materials were sold and delivered to the defendant by the plaintiffs, as principal contractors, and the work performed for him, and that, whatever contract may have existed between the latter and Calway, the plaintiffs knew nothing of it. These findings are well sustained by the evidence, and by reason of the facts so found it is immaterial what were the terms of the contract between defendant and Calway.

3. The finding that on June 25, 1881, the defendant had an interest in the lot upon which the house was erected, is assailed. He contracted for the lot with the owner, and paid for it. He paid from $600 to $1,000 of the cost of erecting the house. Before any conveyance of the lot had been executed, he went into possession thereof, and the lien of the plaintiffs vested. So, when their lien took effect, which was June 25, 1881, the defendant had purchased and paid for the land, and was in possession thereof under such purchase. He was then the absolute owner of the whole beneficial interest therein. There was nothing wanting but the naked legal title, and he was in a position to enforce a conveyance of such title to himself. It is entirely immaterial that he afterwards procured a conveyance of the lot to be made to his sister. Undoubtedly, at the time the lien vested, the defendant had an interest in the lot, as the referee found.

We do not deem it necessary further to discuss the questions of fact involved in the issue. Suffice it to say that the testimony has been carefully examined, and we think it supports all the material findings of fact.

4. The lot upon which the house was erected contains

two fifths of one acre of land.  A strip adjoining, six feet wide by eight rods long, included in the judgment for a lien (and which is part of a public street), contains less than thirty square rods.  There is also included in the judgment a lot adjoining that on which the house stands, on the east and south, containing four fifths of an acre, which was conveyed to the defendant's sister in May, 1882.  Hence the judgment gives the plaintiffs a lien on the defendant's interest in more than one acre of land.  The conclusions of law reported by the referee, which are the basis of the judgment herein, limited the right of lien to one acre, and the limitation should not be disregarded in the judgment.

The conclusions of law may be regarded as a finding that the land in question was and is within the limits of an incorporated city or village, and hence that the right to a lien is limited to one acre.  R. S. sec. 3314.  We must hold the judgment erroneous in the particular under consideration.

But the error does not prejudice the defendant.  He testified on the trial that he had no title to or interest in the four fifths of an acre, and he cannot complain if he is held to his statement.  Having no interest therein, it is a matter of no importance to him whether it is included in the judgment or not.  Hence, on his appeal, the error will not work a reversal of the judgment.  True, he also testified that he had no interest in the lot on which the house stands.  But we have already seen that such statement was abundantly negatived by other proof.  His statement concerning the four fifths of an acre was not so negatived.

5. The judgment commences in the usual form of personal judgments.  It is ordered and adjudged therein that the plaintiffs " do have and recover of the defendant, *John Currier*; the said sum of $255.81," with costs.  It is urged that this is a personal judgment in the first instance, which in such actions is unauthorized.  An examination of the judgment shows that no execution is awarded for the sum

specified, but the judgment proceeds to direct a sale of the property, and provides that on confirmation of the sheriff's report of sale, if there be a deficiency, the plaintiffs may have personal judgment therefor and execution. In view of these facts, the portion of the judgment above quoted was not intended to be and is not a personal judgment against defendant for the whole sum found due the plaintiffs, but only an assessment of the sum so due, as required by sec. 3324, R. S. A judgment in similar form, in an action to foreclose a mortgage, was so construed by this court in *Boynton v. Sisson,* 56 Wis. 401. See, also, *Huse v. Washburn,* 59 Wis. 414.

6. Are the plaintiffs entitled to recover costs? They are so entitled unless they have forfeited the right thereto, under ch. 202, Laws of 1882, by reason of their delay in entering judgment. This chapter requires the successful party in a cause to enter and perfect his judgment within sixty days after the filing of the findings of fact, or the rendition of a verdict. His neglect to do so is deemed a waiver of his right to recover costs, and the clerk is directed to enter the proper judgment without costs.

It is understood that the circuit court held this case not within the statute, because judgment went upon the report of a referee. We cannot concur in this view of the law. The findings of the referee became, by confirmation, the findings of the court, just as effectually as if the court had heard the testimony and made the same findings without the interposition of a referee. Besides, judgment was signed by the judge, and rendered by the court, with the amount of costs left blank, more than sixty days before the costs were taxed and inserted therein. It is scarcely necessary to say that the case is not within the rule of *Cornish v. Mil. & L. W. R. Co.* 60 Wis. 476. It is clearly within the statute, and the plaintiffs, by their delay to enter and perfect judgment within sixty days after the findings of the court in

their favor, waived their right to recover costs in the action.

7. Exceptions were taken by the defendant, before the referee, to certain rulings refusing to admit offered testimony. We do not find any satisfactory proof in the record that these exceptions were renewed in the circuit court. The judgment recites that the court overruled all exceptions to the report of the referee. The record seems to be silent as to the renewal of any other exceptions. Under a well-settled rule of practice, unless exceptions taken before the referee are renewed when the court acts upon his report, they are not available on appeal to this court. *McDonnell v. Schricker*, 44 Wis. 327.

It is believed that the views herein expressed dispose of all material questions argued by counsel. It results therefrom that the judgment of the circuit court must be reversed as to costs, and affirmed in all other respects. Clerk's fees will be taxed against the appellant. No other costs are allowed to either party.

*By the Court.*— Ordered accordingly.